ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUL 0 6 2010

JAMES N. HATTEN, Clerk
By: _____
          Deputy Clerk

AMERICAN HOOD SYSTEMS, INC.

Plaintiff,

v.

KASON INDUSTRIES, INC.; and PETER A. KATZ,

Defendants.

Case No. 1 0 - C V - 2 0 8 3

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiff, American Hood Systems, Inc. ("Plaintiff"), on behalf of itself and a class of all others similarly situated, brings this antitrust action under Section 1 of the Sherman Act (15 U.S.C. § 1), against Defendants Kason Industries, Inc. ("Kason") and Peter A. Katz ("Katz").

## NATURE OF THE CASE

1.    Plaintiff brings this lawsuit as a class action on behalf of all individuals and entities that purchased food service equipment component hardware, including walk-in refrigeration equipment, in the United States from Kason, its predecessors, subsidiaries or co-conspirators from December 1, 2004 through at least February 2009 (the "Class Period").

2.     During the Class Period, Defendants conspired with their competitors to fix prices and allocate customers for food service equipment component hardware (as described below) sold in the United States.  Defendants have pled guilty in a criminal proceeding in federal court to participating in a conspiracy to eliminate competition in the manufacture and sale of commercial and institutional food service equipment component hardware, the primary purpose of which was to fix prices, rig bids and allocate customers.

3.     As a result of Defendants' unlawful conduct, Plaintiff and other class members paid more for food service equipment component hardware than they would have in the absence of Defendants' unlawful conduct.

## JURISDICTION AND VENUE

4.     Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26), to recover damages and costs of suit, including reasonable attorneys' fees, as the result of Defendants' violations of Section 1 of the Sherman Act (15 U.S.C. § 1).

5.     Subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1337 and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26).

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) and Sections 4, 12 and 16 of the Clayton Act (15 U.S.C. §§ 15, 22, and 26).

7.     Defendants reside in and may be found in this District, transact business in this District and the cause of action arose, in part, within the Atlanta Division of this District. The interstate trade and commerce described herein is and has been carried out, in part, within this District.

## INTERSTATE TRADE AND COMMERCE

8.     The activities of Defendants and their co-conspirators, as described in this complaint, were within the flow of, and substantially affected, interstate commerce. During the time period covered by this complaint, Defendants and their co-conspirators marketed and sold food service equipment component hardware throughout the United States.

9.     Defendants, and each of them, have used instrumentalities of interstate commerce to market and/or sell food service equipment component hardware.

## PARTIES

10.     Plaintiff American Hood Systems, Inc. is an Ohio corporation with its principal place of business in Elyria, Ohio. Plaintiff purchased food service equipment component hardware directly from Kason during the Class Period. The prices Plaintiff paid for the food service equipment component hardware were, as a result of the conspiracy herein alleged, higher than they otherwise would have been. As a result of the conspiracy and the antitrust violations alleged herein, Plaintiff was injured in its business and property.

3

11.    Defendant Kason Industries, Inc. is a New York corporation with its

corporate headquarters and principal place of business in Newnan, Georgia. Kason

manufactured and sold food service equipment component hardware to purchasers

in Ohio and throughout the United States during the Class Period. Its products are

used in commercial food service equipment, including walk-in and stand-alone

refrigerators and freezers. Kason manufactures its hardware in the United States

and distributes throughout the United States, Canada, Mexico, South America,

Europe, Asia, Australia, and the Pacific.

12.    Defendant Peter A. Katz, an individual, is a resident of Newnan, Georgia.

During the Class Period, Katz was the President and Chief Executive Officer of

Kason and personally participated in the acts complained of herein. Katz managed

Kason's business operations, including pricing decisions, and had overall

responsibility for Kason's business performance in the sale of food service

equipment component hardware, among other products. He was employed by

Kason from January 24, 1964 to May 29, 2009.

13.    Whenever this Complaint refers to any act, deed or transaction of any

corporation or limited liability company, that allegation means that the corporation

or company engaged in the act, deed or transaction by or through its officers,

directors, agents, employees, or representatives while they were actively engaged

4

in the management, direction, control, or transaction of the corporation's business or affairs.

## AGENTS AND CO-CONSPIRATORS

14.    Various other persons, firms and corporations, not named as Defendants in this complaint, have participated as co-conspirators with Defendants in the violations alleged herein, and have aided, abetted, and performed acts and made statements in furtherance of the conspiracy. Plaintiff reserves the right to name some or all of these entities as defendants at a later date.

15.    Defendants are also liable for acts done in furtherance of the alleged conspiracy by companies they acquired through mergers and acquisitions.

## CLASS ACTION ALLEGATIONS

16.    Plaintiff brings this action on behalf of itself and as a class action under the provisions of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class:

> All persons and entities that purchased food service equipment component hardware in the United States directly from Kason and its co-conspirators from at least December 1, 2004 to at least February 2009. Excluded from the class are Kason, its parents, subsidiaries or affiliates, as well as any co-conspirators, and any governmental agencies or entities.

17.    Plaintiff does not know the exact size of the class, since such information is in the exclusive control of Defendants. However, based on the nature of the trade

and commerce involved, Plaintiff believes that the class numbers in at least the
hundreds and that the members of the class are geographically dispersed
throughout the United States. Therefore, joinder of all members of the class would
be impracticable.

18.     There are questions of law or fact common to the class, including, but not
limited to:

   a.     whether Defendants conspired with others to fix, raise, maintain or
          stabilize the prices of food service equipment component hardware
          sold in the United States;

   b.     whether Defendants conspired with others to allocate markets and
          customers and rig bids for food service equipment component
          hardware sold in the United States;

   c.     whether Defendants' conduct caused injury to the business or
          property of Plaintiff and the class members and, if so, the
          appropriate class-wide measure of damages; and

   d.     whether Defendants took steps to conceal the conspiracy.

These and other questions of law and fact predominate over any questions
affecting only individual members of the class.

19.     Plaintiff's claims are typical of the claims of the class in that Plaintiff is a
direct purchaser of food service equipment component hardware whose purchases
were, in all relevant respects, typical of purchases by other class members, and the
relief sought by Plaintiff is common to the class.

20.    Plaintiff will fairly and adequately protect the interests of the class in that

Plaintiff is a typical purchaser of food service equipment component hardware, has

no conflicts with any other members of the class, and is represented by

experienced and able antitrust class action counsel.  Further, the interests of

Plaintiff are coincident with, and not antagonistic to, those of the class members.

21.    Class action treatment is superior to the alternatives, if any, for the fair and

efficient adjudication of the controversy described herein, because such treatment

permits a large number of injured persons to prosecute their common claims in a

single forum simultaneously, efficiently and without unnecessary duplication of

evidence and effort.  Class treatment also permits the adjudication of claims by

smaller class members who could not afford to individually litigate an antitrust

claim against a large corporate defendant.

## FACTS

## THE FOOD SERVICE EQUIPMENT
## COMPONENT HARDWARE INDUSTRY

22.    Kason sells commercial and institutional food service equipment component

hardware, and it is the leading manufacturer of commercial refrigeration hardware.

Kason's annual sales range from $50 to $100 million, arising largely from the sale

of walk-in refrigeration equipment hardware.  The food service equipment

component hardware manufactured and/or sold by Kason is comparable to and

7

interchangeable with food service equipment component hardware manufactured and sold by its competitors.

23.    Food service equipment component hardware includes fabricated and other parts used in food service equipment, including hardware such as handles, hinges, brackets, latches, fasteners, hydraulic and spring-loaded door closers, metal racks, drawer sliders, drawers and drawer pans used in walk-in refrigeration and in stand-alone hot and cold food service storage equipment; casters, legs, tubing, mounting plates and footings for work tables, food storage and other cafeteria and food service equipment; equipment and accessories for food preparation equipment; plumbing equipment; sliding door systems, thermometers and other accessories for walk-in refrigeration; vinyl curtains for cold and dry storage; electrical equipment used in the production of food service equipment; and other fabrication supplies used in the production of food service equipment. The annual volume of sales for walk-in refrigeration component hardware alone is estimated at up to $60 million in the United States.

24.    Kason's products are purchased by original equipment manufacturers ("OEMs") and fabricators of food service and cafeteria equipment that incorporate the hardware produced by Kason into the final products they manufacture such as cooking ovens, ranges and hoods; walk-in, reach-in and display refrigeration and freezer units; ice and beverage dispensing; stand-alone hot and cold food display

8

and storage units; food preparation equipment; and refrigerated trucks used to transport food items. OEMs purchasing food service equipment component hardware from Kason or its competitors sell their products to commercial food service establishments such as restaurants, bakeries, food service institutions, grocery stores and other food retail stores.

25.    The market for all food service equipment is estimated at $20 billion globally, and $10 billion in United States. Food service equipment component hardware sold by Kason are also purchased by distributors of food service hardware, refrigeration systems installation service providers, and refrigeration repair service providers.

## **VIOLATIONS ALLEGED**

26.    Beginning at least as early as December 1, 2004 and continuing through at least February 2009, Defendants entered into and participated in a combination and conspiracy to suppress and eliminate competition by fixing the prices of food service equipment component hardware sold throughout the United States. This combination and conspiracy, which consisted of a continuing agreement, understanding, and concert of action to raise, fix and maintain the prices for the sale of food service equipment component hardware sold throughout the United States and elsewhere, and to rig bids and allocate customers for such hardware,

was an unreasonable restraint of trade and commerce in violation of Section 1 of
the Sherman Act, 15 U.S.C. § 1.

27.    The conspiracy began in 2004 when Kason, through its then CEO,
Defendant Katz, began discussions with their co-conspirators concerning their joint
desire to stabilize, fix and maintain prices to their customers in order to avoid price
competition.

28.    In furtherance of the conspiracy, Defendants and their co-conspirators
engaged in discussions, attended meetings, and communicated by phone, facsimile,
e-mail and in other ways for the purpose of reaching an agreement to suppress and
eliminate competition through customer allocation, bid-rigging, and other anti-
competitive actions.

29.    The primary purpose of the customer allocation agreement was to prevent
customers from obtaining lower prices through competition, thereby increasing
Defendants' profits.

30.    For approximately four years after the start of the conspiracy, in furtherance
of their unlawful agreement and combination, Defendants allocated customers
between and among one another; agreed not to compete for one another's
"protected" customers; agreed not to submit price quotes or bids to one another's
protected customers; agreed to submit bogus, artificially high bids to one another's
protected customers; shared price information with one another to prevent

underbidding and to maintain artificially high prices; and quoted prices and submitted bids in accordance with their unlawful agreement with one another. In addition, Defendants took measures to police and enforce their unlawful agreement and conspiracy.

31.    In furtherance of the conspiracy, both Kason and John Doe directed their salespeople to not solicit business from the other company's protected customers. Defendants made efforts to ensure that this policy was enforced.

32.    On or about February 2009, Defendants' agreement broke down.

33.    On May 6, 2010, the United States Department of Justice ("DOJ") announced an ongoing federal antitrust investigation of customer allocation in the food service equipment component hardware industry. The investigation is being conducted by the Antitrust Division's Atlanta Field Office and the FBI's Atlanta Office.

34.    On the same day, the DOJ filed a one-count felony charge in the U.S. District Court for the Northern District of Georgia, Atlanta Division, against Defendants Kason and Katz, and announced that the two defendants had agreed to plead guilty to conspiring to allocate customers for the sale of food service equipment component hardware. Specifically, the two defendants had agreed to plead guilty to the following anticompetitive conduct set forth in the DOJ's filed Criminal Information:

a.     attending meetings, engaging in discussions by phone,
       facsimile and e-mail concerning the sale of food service
       equipment component hardware;

b.     agreeing during those meetings and discussions to allocate
       customers for food service equipment component hardware
       by agreeing not to compete for one another's protected
       customers either by not submitting prices or bids to certain
       customers or by submitting bids that were intentionally high;

c.     discussing and exchanging prices to certain customers to
       ensure that the conspirators would not undercut one
       another's prices for food service equipment component
       hardware;

d.     quoting prices, submitting bids and selling food service
       equipment component hardware in accordance with the
       collusive and non-competitive agreements reached;

e.     selling food service equipment component hardware to
       customers in the United States and elsewhere at collusive
       and non-competitive prices pursuant to the agreements
       reached; and

f.     accepting payment for the sale of food service equipment
       component hardware at collusive and non-competitive
       prices.

35.   On May 19, 2010, Defendants filed their formal plea agreements with the

Court. As part of their plea agreements, Defendants Kason and Katz have agreed

to cooperate with the DOJ in its ongoing investigation. In addition, Kason agreed

to pay a criminal fine of $3.3 million.

36.    The DOJ agreed that it would not seek a restitution order from Kason "[i]n light of the availability of civil causes of actions, which potentially provide for a recovery of a multiple of actual damages."

37.    Defendants engaged in the activities described in the foregoing paragraphs in furtherance of their conspiracy and for the purpose of effectuating the unlawful contract, combination and conspiracy described herein.

## TOLLING OF STATUTE OF LIMITATIONS

38.    Until May 6, 2010, neither Plaintiff nor the class members had knowledge of any of the violations alleged herein.  Further, neither Plaintiff nor the class members, until recently, could have discovered, by the exercise of reasonable diligence, that Defendants had engaged in the violations alleged herein since Defendants actively concealed these violations to prevent discovery of their illegal activity.

39.    Defendants successfully engaged in an illegal price-fixing conspiracy that, by its nature, was inherently self-concealing.

40.    Defendants actively took steps to keep the unlawful conduct identified above secret from others, especially from their customers.  Defendants did not inform customers, for example, that they had fixed prices, allocated customers, and rigged bids; instead they concealed the fact of that conduct.

41.    Plaintiff and the class members could not have discovered the alleged contract, combination and conspiracy at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques secretly employed by Defendants and their co-conspirators to avoid detection of, and to fraudulently conceal, their contract, combination and conspiracy. Defendants concealed the contract, combination and conspiracy herein alleged by various means and methods, including, but not limited to, secret and surreptitious communications. Moreover, Defendants engaged in bid-rigging and customer allocation by presenting ostensibly competitive bids that were intentionally inflated or by declining to offer bids to customers. Bid-rigging is inherently self-concealing as it can only persist if the agreement is concealed.

42.    The unlawful actions of Defendants herein alleged were wrongfully concealed and carried out in a manner that precluded detection.

43.    By virtue of the concealment by Defendants and their co-conspirators, the running of any statute of limitations has been tolled and suspended with respect to any claims that Plaintiff and the other class members have as a result of the unlawful contract, combination and conspiracy alleged in this Complaint.

## EFFECTS/DAMAGES

44.    Defendants' contract, combination and conspiracy had the following effects, which have been admitted to by Defendants Kason and Katz, including:

14

a.   prices charged by Defendants and co-conspirators to Plaintiff and the members of the class were maintained at artificially high and non-competitive levels;

b.   buyers of food service equipment component hardware were deprived of free and open competition in the purchase of such hardware; and

c.   competition in the sale of food service equipment component hardware was unreasonably restrained.

45.   Throughout the Class Period, Plaintiff and members of the class purchased food service equipment component hardware from Defendants and/or their co-conspirators.

46.   As a direct and proximate result of Defendants' and their co-conspirators' illegal contract, combination and conspiracy, Plaintiff and the members of the class were injured and financially damaged in their businesses and property in that they paid more for food service equipment component hardware than they would have in the absence of the unlawful activities of Defendants and their co-conspirators. Plaintiff and other class members thus suffered substantial damages.

## **PRAYER FOR RELIEF**

47.   WHEREFORE, Plaintiff prays as follows:

a.   That the Court determines that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

b.   That the aforesaid contract, combination and conspiracy, and the acts done in furtherance thereof by Defendants, be adjudged to have been in violation of Section 1 of the Sherman Act, 15 U.S.C.

§ 1, and that Plaintiff and the members of the class have been injured in their businesses and property as a result of such violations;

c.     That judgment be entered for Plaintiff and the members of the class against Defendants for three-fold the amount of damages sustained by Plaintiff and the class as allowed by law, and that Defendants be enjoined from further involvement in the described alleged conduct, together with the costs of this action, including reasonable attorneys' fees; and

d.     That Plaintiff and members of the class have such other, further and different relief as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

48.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Dated:  July 6, 2010                              Respectfully submitted,

                                                  _____
                                                  W. Pitts Carr (GA Bar No. 112100)
                                                  10 North Parkway Square, N.W.
                                                  4200 Northside Parkway
                                                  Atlanta, GA 30327
                                                  Telephone:  (404) 442-9000
                                                  Facsimile:   (404) 442-9700
                                                  PCarr@CarrPalmer.com

                                                  Roberta D. Liebenberg
                                                  Donald L. Perelman
                                                  Ria C. Momblanco
                                                  **FINE, KAPLAN AND BLACK**
                                                  1835 Market Street, Suite 2800

Philadelphia, PA  19103
Telephone: (215) 567-6565
Facsimile:  (215) 568-5872
rliebenberg@finekaplan.com
dperelman@finekaplan.com
rmomblanco@finekaplan.com

Thomas A. Muzilla
**THE MUZILLA LAW FIRM, LLC**
Tower at Erieview, Suite 1100
1301 East 9th Street
Cleveland, OH  44114
Telephone:  (216) 458-5880
Facsimile:  (216) 928-0016
tom@muzillalaw.com

Jeffrey B. Gittleman
**BARRACK, RODOS & BACINE**
Two Commerce Square
2001 Market Street, Suite 3300
Philadelphia, PA  19103
Telephone: (215) 963-0600
Facsimile:  (215) 963-0838
jgittleman@barrack.com

Howard Sedran
**LEVIN, FISHBEIN, SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
Facsimile:  (215) 592-4663
hsedran@lfsblaw.com

*Attorneys for Plaintiff American Hood Systems, Inc. and the Class*

## CERTIFICATION OF COMPLIANCE WITH
## LOCAL RULE TYPEFACE REQUIREMENTS

Pursuant to LRs 5.1 and 7.1D, I certify that American Hood Systems, Inc.'s

Complaint has been prepared with a Times New Roman 14-point font, which is a

typeface that has been approved of by the court in LR 5.1.

Date: July 6, 2010

_____
W. Pitts Carr, Esq.